IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| LANA WEINBACH, | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MARRIOTT INTERNATIONAL, INC., | ) |
| as successor-in-interest by merger to | ) |
| STARWOOD HOTELS AND RESORTS | ) |
| WORLDWIDE, INC. | ) |
| | ) |
|     Serve: Registered Agent | )  Case number: |
|           CT Corporation | ) |
|           120 S. Central Ave | ) |
|           Clayton, Missouri 63105 | )  **JURY TRIAL DEMANDED** |
| | ) |
| and | ) |
| | ) |
| STARWOOD HOTELS AND RESORTS | ) |
| WORLDWIDE, LLC | ) |
| | ) |
|     Serve: Registered Agent | ) |
|           CT Corporation | ) |
|           120 S. Central Ave | ) |
|           Clayton, Missouri 63105 | ) |
| | ) |
|        Defendants. | ) |

## **COMPLAINT**

1. In this action, Plaintiff Lana J. Weinbach seeks compensation for the wrongful escheat of stock she held in the ITT Corporation ("ITT") and then, by merger, in Starwood Hotels and Resorts Worldwide, Inc. ("Starwood"), which is now a wholly owned subsidiary of Marriott International, Inc.

2. Starwood breached common standards of care and due diligence before wrongfully surrendering Ms. Weinbach's shares to the State of Missouri as purported abandoned

1

property and Defendants are not entitled to any immunity under Missouri's Disposition of Unclaimed Property Act.

3. Starwood's wrongful and careless actions are antithetical to Marriott's crafted public image. In a recent ad campaign, Marriott held itself out to the public as being guided by the Golden Rule: "Treating others like we'd like to be treated. It has always been our guiding principle." As Marriott's predecessor and subsidiary, Starwood failed this core principle by dispossessing Lana Weinbach of her stock without any due diligence or attempt to locate her.

## PARTIES, JURISDICTION AND VENUE

4. Plaintiff Lana J. Weinbach is a 74-year-old woman who resides in St. Louis County, Missouri. Her mailing address is 8720 W Kingsbury Avenue, St. Louis, Missouri 63124 (the "W Kingsbury Address"). The W Kingsbury Address has been Ms. Weinbach's mailing address for at least the past 60 years.

5. Defendant Marriott International, Inc. ("Marriott") is the successor-by-merger to Starwood Hotels and Resorts Worldwide, Inc. Marriott is a Delaware corporation with its corporate headquarters located in Bethesda, Maryland.

6. Marriott can be served through its Registered Agent CT Corporation, 120 S. Central Ave., St. Louis, Missouri 63105.

7. Upon information and belief, Defendant Starwood Hotels and Resorts Worldwide, LLC ("Starwood LLC") is a wholly owned subsidiary of Marriott after Marriott acquired Starwood Hotels and Resorts Worldwide, Inc. in a nearly $14 billion merger. Starwood LLC is a limited liability company existing under and by virtue of the laws of Maryland, and, upon information and belief, is a successor-in-interest to Starwood Hotels and Resorts Worldwide, Inc.

8. Starwood LLC can be served through its Registered Agent, CT Corporation, 120 S. Central Ave., St. Louis, Missouri 63105.

9. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy exceeds $75,000 and this action is between citizens of different States.

10. Under Missouri Revised Statute §506.500.1 (3), Defendants are subject to personal jurisdiction in Missouri because they committed a tortious act in Missouri, as set forth below, by wrongfully remitting Plaintiff's stock to the Treasurer and thereby depriving Ms. Weinbach of her property. Plaintiff's causes of action arise out of this wrongful conduct.

11. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the event or omissions giving rise to this action occurred in St. Louis County and Weinbach was first injured in St. Louis County, Missouri by being deprived of her stock there.

## FACTUAL BACKGROUND

12. Lana Weinbach is the daughter of Ben and Sarah Weinbach. Ms. Weinbach's mother, Sarah, died in 1977. Her father, Ben, died in January 2009.

13. Sarah and Ben Weinbach, before their deaths, and Lana Weinbach had all resided at 8720 W Kingsbury Avenue, St. Louis, Missouri (the "W Kingsbury Address"). The W Kingsbury Address has remained Ms. Weinbach's mailing address since approximately 1952.

14. During their lives, Ben and Sarah Weinbach purchased various securities and, as part of their estate planning, titled the securities jointly with Lana Weinbach.

15. On or about January 30, 1997, Ben and Lana Weinbach purchased 1,000 shares of ITT Corporation stock in certificate form and titled the shares in their names as joint tenants with right of survivorship.

3

16. Ben Weinbach had been a long-time employee of ITT and was receiving a pension from ITT at the time of the purchase of the 1,000 shares.

17. Upon information and belief, Starwood acquired and/or merged with ITT Corporation.

18. As part of that merger, Lana and Ben Weinbach received 1.543 shares of Starwood stock for each share of ITT stock they owned.  Accordingly, the Weinbachs received 1,543 Starwood shares (the "Starwood Shares") in the merger.

19. Following the acquisition, Ben Weinbach received his ITT pension from Starwood and continued to receive his pension at the 8720 W. Kingsbury Address until his death in 2009.

20. In 2003, without notice to Lana Weinbach, Starwood reported the Starwood Shares as abandoned property to the Missouri Treasurer's Office and transferred the shares to the Treasurer via electronic book-entry.

21. As a result, Lana and Ben Weinbach were dispossessed of the Starwood Shares and the dividends associated with said shares.

22. Starwood failed to exercise reasonable due diligence or exercise reasonable care in attempting to locate or contact Lana and Ben Weinbach prior to reporting the shares as abandoned unclaimed property.

23. Lana Weinbach and Ben Weinbach had resided at the W Kingsbury Address for decades before Defendants transferred the Starwood Shares to the Treasurer.

24. At all times, Lana Weinbach's and Ben Weinbach's address registered with Starwood and its predecessor, ITT, was the W Kingsbury Address.

25. Prior to and after Starwood's acquisition of ITT, Ben Weinbach continuously received his pension checks at the W Kingsbury Address, and regularly cashed said checks.

26. In short, Starwood unquestionably knew or had reason to know the whereabouts of Lana Weinbach and Ben Weinbach at the time they reported and transferred the Starwood Shares to the Missouri Treasurer's Office.

27. Starwood failed to communicate with or notify Lana and Ben Weinbach that it deemed the Starwood Shares as abandoned property, and failed to exercise the reasonable care and diligence necessary to ascertain the whereabouts of the Weinbachs or take the necessary steps to prevent it from reporting the Starwood Shares as presumed abandoned property.

28. On information and belief, Starwood failed to send any communication to Lana and Ben Weinbach notifying them of the potential that Starwood would determine the Starwood Shares to be abandoned.

29. Starwood did not make any location efforts that were commensurate with or reflected the substantial value of the Starwood Shares at the time they were reported as presumed abandoned property and transferred to the Treasurer's office.

30. Because of Starwood's failure to contact or notify the Weinbachs that it had declared the Starwood Shares as presumed abandoned property and transferred the same to the Treasurer, Lana and Ben Weinbach had no knowledge or reason to inquire as to whether any claim in connection with said wrongful escheat existed or even accrued.

31. In 2006, Starwood entered into a transaction in which Starwood transferred certain properties to Host Hotels & Resorts, Inc. (the "Host Shares").

32. Because they were Starwood shareholders, Lana and Ben Weinbach received 944.6246 Host Shares in connection with the Starwood-Host transaction.

33. On information and belief, Lana and Ben Weinbach's Starwood Shares were in the possession of the Treasurer (by electronic book entry) at the time the Starwood-Host transaction occurred.

34. The Host Shares belonging to Lana and Ben Weinbach were delivered to the Treasurer by electronic book-entry.

35. Because of Starwood's initial wrongful transfer of the Starwood Shares to the Treasurer in 2003, Lana and Ben Weinbach were deprived of possession of the Host Shares.

36. After the Starwood-Host transaction, the Treasurer held 1,543 Starwood Shares and 944.6246 Host Shares, for a total of 2,487.6246 shares that belonged to Lana and Ben Weinbach.

37. On July 30, 2009, the Treasurer sold the 1,543 Starwood Shares for $35,213.42, or $22.82 per share.

38. On September 10, 2009, the Treasurer sold the 944.6246 Host Shares for $8,958.90, or 9.48 per share.

39. At no time did the Weinbachs receive any telephonic, mailed or other notice from the Treasurer that the Starwood Shares had been transferred to it as abandoned property or that the Treasurer was in possession of the Host Shares.

40. At no time did the Weinbachs receive any telephonic, mailed or other notice that the Treasurer intended to sell the Starwood Shares or the Host Shares.

41. Even crediting for the proceeds of the Treasurer's sale, Lana Weinbach has suffered substantial losses.

42. Lana and Ben Weinbach were "buy-and-hold" investors. And Ben's intention was for the ITT/Starwood stock to provide dividend income to support Lana later in her life.

6

43. Had Starwood not wrongfully transferred the Starwood Shares to the Treasurer, Lana Weinbach would have continued to own the Starwood Shares through and after the company's acquisition by Marriott.

44. In or around September 2016, Marriott acquired Starwood in a nearly $14 billion merger. In that transaction, Starwood shareholders received 0.8 Marriott shares in exchange for each Starwood share owned, as well as $21.00 per share of Starwood.

45. As a result, the current value of the Starwood Shares and Host Shares that were wrongfully transferred to the Missouri Treasurer's Office exceeds the price at which the Treasurer sold them.

46. Had Starwood provided proper notice to Lana Weinbach and Ben Weinbach that it considered the Starwood Shares abandoned, the Weinbachs would have taken appropriate action to prevent said shares from being presumed abandoned.

47. Starwood did not provide Lana Weinbach any notice or indication of the foregoing. As a result, she did not know, and had no reason to know, that Defendants had dispossessed her of her Starwood Shares and Host Shares.

48. Lana Weinbach did not ascertain that she had been so dispossessed until March 8, 2013 (at the earliest), when she contacted the Missouri State Treasurer's office to inquire if she had any unclaimed property after she had viewed a television infomercial stating that States held "unclaimed" property for their residents.

49. Upon further inquiry, she learned that she may have been injured by such dispossession and, upon still further inquiry, that she suffered substantial damages as set forth above.

7

50. As set forth above, Starwood did not comply with Missouri's Disposition of Unclaimed Property law in that it did not review or properly review Starwood's records to determine that the Weinbachs actually maintained another account with Starwood, i.e., Ben Weinbach's pension account; did not make proper efforts to locate Ben Weinbach and Lana Weinbach, and did not provide them proper notice that Defendants deemed the Starwood Shares to be abandoned and intended to transfer them to the Treasurer.

51. Therefore, Starwood did not "deliver[] the abandoned property *pursuant to [Missouri Revised Statute] sections 447.505 to 447.595*" (emphasis added), and Defendants are not entitled to be relieved from any statutory or common law liability under Missouri Revised Statute §447.545.1.

52. In addition, on information and belief, Starwood delivered the Starwood shares to the Treasurer by an electronic book-entry by changing the registered owner of the shares rather than by the delivery of a duplicate certificate to the Treasurer with an appropriate Starwood officer's signature as is required by statute. Accordingly, Defendants are not entitled to be relieved from any statutory or common-law liability under Missouri Revised Statute §447.545.4.

## COUNT I:
### Negligence

53. Plaintiff restates and incorporates the allegations contained in ¶¶ 1 through 52 as though fully set forth herein.

54. Starwood owed a duty of care to Plaintiff to exercise reasonable and necessary diligence to review Starwood's records properly to locate the Weinbachs' other active account with Starwood.

8

55. Starwood owed a duty of care and reasonable diligence to Plaintiff to locate and communicate with Plaintiff and her father regarding the Starwood Shares prior to reporting and transferring said shares to the State Treasurer's Office as presumed abandoned property.

56. Starwood breached its duty of care and diligence to Lana Weinbach by:

a) failing to review its records to determine Ben Weinbach's active account with Starwood prior to presuming the Starwood Shares to be abandoned;

b) failing to locate and notify Lana and Ben Weinbach that Starwood had deemed the Starwood Shares as abandoned property or communicate with Lana and Ben Weinbach regarding the Starwood Shares prior to reporting and transferring said shares to the Treasurer.

57. Starwood's common law duties of care and diligence are partially codified in Missouri's Statute and Regulations, and Starwood's failure to comport with the statutory requirements precludes the application of the provisions of the statutes and regulations that provide immunity from liability.

58. For example, Missouri Revised Statute §447.539.5 provides:

> If the holder of property presumed abandoned pursuant to sections 447.500 to 447.595 knows the whereabouts of the owner, if the owner's claim has not been barred by the statute of limitations, and the property involved is valued at fifty dollars or more, the holder shall, before filing the annual report, communicate with the owner and take necessary steps to prevent abandonment from being presumed. The holder shall exercise such reasonable and necessary diligence as is consistent with good business practice to ascertain the whereabouts of such owner of property valued at fifty dollars or more within one year prior to reporting the property to the state treasurer.

59. Starwood's obligation to exercise "such reasonable and necessary diligence as is consistent with good business practice to ascertain the whereabouts of such owner," is explained in Missouri Revised Statute §447.503(11) (emphasis added):

9

> **"Reasonable and necessary diligence as is consistent with good business practice", efforts appropriate to and commensurate with the nature and value of the property at issue**; however, the holder shall send a notice regarding the unclaimed property via first class mail postage prepaid, marked "Address Correction Requested". Such letter shall be sent by the holder within twelve months prior to turning the property over to the treasurer.

60. Further clarifying Starwood's obligation to make attempts to locate owners of allegedly abandoned property, The Missouri Code of State Regulations, 15 C.S.R. 50-3.070 (3), regarding "Searching for Owners" provides:

> (3) Searching for Owners. Holders are to exercise reasonable and necessary diligence as is consistent with good business practice in attempting to locate owners of abandoned property of fifty dollars ($50) or more. These location efforts should be timed to occur prior to the reporting deadline (May 1, life insurance companies or November 1, all other entities). Owner location efforts may include, but are not limited to:
>
> (A) Reviewing the holder [Starwood's] records to determine whether the owner has other active account(s) within the entity. **If the owner has an active account other than the property subject to the abandonment period, that property shall not be considered abandoned and the holder shall update its records accordingly**;
>
> (B) Mailing a letter, first-class with postage prepaid and with return address requested, to the last known address of the owner;
>
> (C) Contacting the owner by telephone is acceptable notification; however, the holder shall document that contact was made.

(emphasis added).

61. As set forth above, Starwood did not comport with the foregoing provisions and Defendants, as successors to Starwood, are not entitled to the statutory immunity provided for under the Act.

62. As set forth in detail above, Lana Weinbach was, and is, the rightful owner of her wrongfully escheated Starwood (now Marriott) Shares and Host Shares.

10

63. As set forth in detail above, Lana Weinbach was injured by the Defendants' wrongful conduct in that she was dispossessed of the Starwood Shares and Host Shares, their dividends, and cash consideration from mergers, which exceeds $75,000 in value.

64. As set forth in detail above, Lana Weinbach was injured as a result of the Defendants' wrongful conduct in that but for Defendants' misconduct in improperly presuming the Starwood Shares were abandoned, and transferring them to the Treasurer, and by their failure to communicate with Ben Weinbach and Lana Weinbach regarding the Shares and their alleged abandonment, Lana Weinbach would have continued to possess the Starwood Shares at the time of the Marriott acquisition and would have received and held such Marriott shares and have the opportunity to retain them or sell them at a time of her own choosing.

65. Defendants are successors-in-interest to Starwood and are liable to Plaintiff for Starwood's wrongful conduct.

WHEREFORE, Plaintiff Lana Weinbach respectfully requests that the Court enter judgment in her favor and against Defendants Marriott and Starwood, LLC, jointly and severally, grant her damages in an amount to be proved at trial but which exceeds $75,000, costs and interest, and order whatever additional relief it deems appropriate.

## COUNT II:
**(Conversion)**

66. Plaintiff restates and incorporates the allegations contained in ¶¶ 1 through 65 as though fully set forth herein.

67. As set forth in detail above, Lana Weinbach was, and is, entitled to possession of the Starwood Shares and Host Shares in that she was, and is, their rightful owner.

68. As set forth in detail above, Starwood exercised unauthorized control over the Starwood Shares and transferred them or caused them to be transferred to the Treasurer.

11

69. As set forth above, by virtue of the wrongful escheat of the Starwood Shares, the Host Shares were wrongfully transferred to the Treasurer.

70. As a result, as set forth in detail above, Lana Weinbach has been deprived of possession of the Starwood Shares and Host Shares in that the Treasurer sold them.

71. As a result, Lana Weinbach has suffered damages in that she has lost possession and ownership of the Starwood Shares and Host Shares, which, to date, far exceed the value of the shares at the time the Treasurer sold them.

72. Defendants are successors-in-interest to Starwood and are liable to Plaintiff for Starwood's wrongful conduct.

WHEREFORE, Plaintiff Lana Weinbach respectfully requests that the Court enter judgment in her favor and against Defendants Marriott and Starwood, LLC, jointly and severally, grant her damages in an amount to be proved at trial but which exceeds $75,000, costs and interest, and order whatever additional relief it deems appropriate.

## COUNT III
### (Breach of Fiduciary Duty)

73. Plaintiff restates and incorporates the allegations contained in ¶¶ 1 through 72 as though fully set forth herein.

74. As set forth above, with respect to Plaintiff's Starwood Shares, Starwood by its superior knowledge and position owed fiduciary duties, including duties of loyalty and trust, to Ms. Weinbach to safeguard and protect her shares, to maintain accurate books and records and to otherwise refrain from engaging in conduct that would unilaterally dispossess Plaintiff of her shares.

75. As set forth above, Starwood knew or should have known that it possessed information that Plaintiff and her father maintained another active account with Starwood, which would have prevented Starwood from presuming Plaintiff's shares as abandoned property.

76. As set forth above, Starwood breached its fiduciary duties to Plaintiff by wrongfully escheating the Starwood Shares to the State Treasurer.

77. As a direct and proximate result of Starwood's misconduct, Plaintiff suffered damages, including the lost value of Starwood Shares and Host Shares, which exceeds $75,000.

78. Defendants are successors-in-interest to Starwood and are liable for Starwood's wrongful conduct.

WHEREFORE, Plaintiff Lana Weinbach respectfully requests that the Court enter judgment in her favor and against Defendants Marriott and Starwood, LLC, jointly and severally, grant her damages in an amount to be proved at trial but which exceeds $75,000, costs and interest, and order whatever additional relief it deems appropriate.

        Respectfully submitted,

        SWMW LAW, LLC

        _/s/ Michael A. Brockland_____
        Michael A. Brockland #MO60856
        701 Market Street, Ste. 1000
        St. Louis, MO 63101
        314-480-5180 telephone
        mike@swmwlaw.com