UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LANA J. WEINBACH, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:18CV01723JCH |
| MARRIOTT INTERNATIONAL, INC., et al., | ) |
| Defendant(s). | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion to Enforce Settlement, filed on February 27, 2019, (ECF No. 37) and Plaintiff's Cross-Motion to Enforce Settlement, filed on February 28, 2019, (ECF No. 39). The Motions are fully briefed and ready for disposition.

## BACKGROUND

Plaintiff brought a case for compensation for the wrongful escheat of stock that she held in Starwood Hotels and Resorts World Wide, Inc., ("Starwood") by merger. Starwood is now a wholly owned subsidiary of Marriott International. (ECF No. 1 at ¶ 1).

Plaintiff is the daughter of Ben and Sarah Weinbach.[1] (ECF No. 1 at ¶ 12). Plaintiff's parents purchased various securities and titled the securities jointly with Plaintiff. *Id.* at ¶ 14. On or about January 30, 1997, the Weinbachs purchased 1,000 shares of ITT Corporation stock in certificate form and titled the shares in their names as joint tenants with right of survivorship. *Id.* at ¶ 15. Plaintiff alleges that Starwood acquired or merged with ITT Corporation and gave 1.543 shares of Starwood stock to the Weinbachs for each share of ITT stock owned. Following the merger the Weinbachs received 1,543 Starwood shares ("Starwood Shares"). *Id.* at ¶ 18.

---

[1] Ben and Sarah Weinbach predeceased the Plaintiff. Sarah Weinbach in 1977 and Ben Weinbach in 2009. (ECF No. 1, at ¶ 12).

1

Plaintiff alleges that in 2003, without notice to Plaintiff, Starwood reported the Starwood Shares as abandoned property to the Missouri Treasurer's Office and transferred them via electronic book entry, which dispossessed Plaintiff and her father of the Starwood Shares and dividends therefrom. *Id.* at ¶¶ 20-21. In 2006, Starwood entered into an agreement transferring certain properties to Host Hotels & Resorts, Inc. (the "Host Shares"). *Id.* at ¶ 31. Plaintiff alleges that because they owned the Starwood Shares, Plaintiff and her father received 944.6246 Host Shares in connection with the transaction. *Id.*, ¶¶ 32.

Plaintiff alleges that on July 30, 2009, the Treasurer sold the 1,543 Starwood Shares for thirty-five thousand two hundred dollars and forty-two cents ($35,213.42); and on September 10, 2009 the Treasurer sold the 944.6246 Host Shares for eight thousand nine hundred and fifty-nine dollars and ninety cents ($8,959.90). (ECF No. 1, ¶¶ 37-38). Plaintiff further alleges that in September 2016, Marriott acquired Starwood in a merger. In that transaction Starwood Shareholders received, 0.8 Marriott shares in exchange for each Starwood share owned as well as twenty-one dollars ($21) per share of Starwood. Plaintiff asserts that as a result of the merger, the current value of the Starwood shares and Host shares transferred to the Missouri Treasurer's Office exceed the price at which they were sold. *Id.*, ¶¶ 44-45.

In 2016, Plaintiff filed a Petition in St. Louis County Circuit Court (Case No. 16SL-CC01622) which was removed to Federal District Court for the Eastern District of Missouri (4:16CV00783) claiming negligence per se and conversion. (ECF No. 37). On October 9, 2018, Plaintiff filed a Complaint in this Court for negligence, conversion, and breach of fiduciary duty

based on diversity. On November 16, 2018, Defendants filed a Motion to Stay Proceedings until the Plaintiff paid costs and fees and additionally filed a Motion to Dismiss. (ECF Nos. 12, 16).[2]

Plaintiff filed a Memorandum indicating that the Parties were negotiating the final terms of a resolution to the action and requested that the Court give the Parties thirty (30) days to finalize a settlement. (ECF No. 34). On January 28, 2019, the Court issued an Order that Counsel shall file within thirty (30) days a stipulation of dismissal, a motion for leave to voluntarily dismiss, or a proposed consent judgement with the Court. On February 27, 2019, and February 28, 2019, the Defendants and Plaintiff respectively filed Motions to Enforce Settlement.

At issue is the addition of the following paragraph ("The Disputed Paragraph") which states:

> Additionally, Ms. Lana Weinbach and her assigns, heirs, agents and attorneys forever relinquishes all claims, ownership, or interest in the disputed stock in question, whether as stock in ITT Corporation, Starwood Hotels and Resorts Worldwide, Inc., Host Hotels & Resorts, Inc., or Marriott International, Inc. and all its predecessors, successors, parents, owners, direct subsidiaries, indirect subsidiaries, affiliates, and their assigns, agents, directors, officers, employees, heirs, personal representatives and shareholders. (ECF No. 38 at ¶ 7).

## I. Defendants' Statement of the Facts and Argument

In support of their Motion to Enforce, Defendants state that on January 25, 2019, the parties believed that they had reached a settlement and were merely negotiating final terms. *Id.* at ¶ 5). On February 15, 2019, Defendants sent the Plaintiff a finalized Confidential Settlement & Release form. (ECF No. 38 at ¶ 4; ECF No. 38-1). On February 26, 2019, Plaintiff's counsel returned to Defendants' counsel proposed revisions which had been discussed between counsel and a final Confidential Settlement & Release. (*Id.* at ¶ 6; Defendants' Exhibit B, February 26,

---

[2] Plaintiff has not yet responded but asked the Court for extension of time to file response. The Motion to Stay and the Motion to Dismiss were dismissed without prejudice on January 28, 2019 following Plaintiff's filing of a Memorandum with the Court indicating that the Parties had reached a settlement. (ECF Nos. 34, 35).

2019, 1:25 PM Correspondence ECF No. 38-2). The Disputed Paragraph is omitted. *Id.* Defendant considers the Disputed Paragraph to be a material aspect of the settlement to ensure that all claims and potential claims against Defendants are extinguished in consideration for settlement. Defendant alleges that Plaintiff's counsel then sent a Confidential Release & Settlement to Defendants' counsel which contained a modified version of The Disputed Paragraph:

> Additionally, *as to the released Marriot parties in this section only,* Ms. Lana Weinbach and her assigns, heirs, agents and attorneys forever relinquishes all claims, ownership, or interest in the disputed stock in question, whether as stock in ITT Corporation, Starwood Hotels and Resorts Worldwide, Inc., Host Hotels & Resorts, Inc., or Marriott International, Inc. and all its predecessors, successors, parents, owners, direct subsidiaries, indirect subsidiaries, affiliates, and their assigns, agents, directors, officers, employees, heirs, personal representatives and shareholders.

(ECF No. 38. at ¶ 7; Defendant's Exhibit C: February 26, 2019, 3:02 PM Correspondence ECF No. 38-3).

Defendant further states that on February 27, 2019, Plaintiff's counsel contacted Defendants' counsel with further revisions, removing the Disputed Paragraph from the Confidential Settlement & Release and that Plaintiff's counsel maintained that Plaintiff would not accept the provision for sentimental reasons. (ECF No. 38, ¶¶ 8-9; Defendant's Exhibit D: February 27, 2019, 10:04 AM Correspondence ECF No. 38-4). Defendant argues that Plaintiff's counsel had apparent and presumed authority and expressed that he could make the final Confidential Settlement & Release work, and therefore Plaintiff should be bound to the Confidential Settlement & Release including the Disputed Paragraph. *Id.,* ¶¶ 11-12. Defendant argues that the Plaintiff's proposed release would not prohibit the Defendants from being adversely affected by claims arising from other parties concerning the stock. *Id.* at ¶ 20.

## II. Plaintiff's Statement of the Facts and Argument

In support of her Motion to Enforce, Plaintiff states that the Plaintiff and Defendants agreed to a confidential settlement of her claims in this case, including the settlement amount, mutual confidentiality of the settlement terms and mutual releases of all claims related to the matters raised. (ECF No. 39). Plaintiff alleges that by January 17, 2019, the Plaintiff and Defendants had agreed upon the settlement amount and Plaintiff's counsel submitted proposed revisions of a sample Confidential Settlement and Release Agreement to Defendants. (*Id.*; ECF No. 42-2). On January 24, 2019, counsel for Plaintiff spoke with counsel for Defendants at which time the Defendants indicated that they would include the mutuality provision and other language to consider for the inclusion with the settlement. *Id.* Plaintiff asserts that Defendants' counsel did not request adding to the agreement beyond the general release. *Id.*

Plaintiff contends that the final material terms of the settlement agreement are memorialized in Plaintiff's final version of the Confidential Settlement Agreement & Release sent to Defendant's counsel on February 27, 2019. (*Id.*; ECF No. 42-1). The final agreement sent by the Plaintiff omits the Disputed Paragraph. *See,* (ECF No. 42-1). Plaintiff asserts that the Defendants introduced the Disputed Paragraph on February 15, 2019, after the Plaintiff, with the consent of the Defendants, notified the Court that the parties were finalizing the terms of the settlement in this case. (ECF No. 39, at ¶ 4). Plaintiff states that the additional term was not contemplated by the Plaintiff nor suggested by the Defendants on January 24, 2019, when the Plaintiff filed her memorandum with the Court. *Id.* Plaintiff rejects the Disputed Paragraph as an after-the-fact addition to the release terms. *Id.* at ¶ 5. Plaintiff further states that as part of the settlement she agreed to release all claims against the Defendant relating to the matters at issue in

this case, and that the Plaintiff is willing to honor the terms under the February 27, 2019, agreement. *Id.*

## **DISCUSSION**

The Court has authority to enforce a settlement reached between two parties in a case pending before it. *See Chaganti & Associates, P.C. v. Nowonty*, 470 F.3d 1215, 1220 (8th Cir. 2006). "A motion to enforce settlement adds a collateral action for specific performance of the agreement." *Kenney v. Vansittert*, 277 S.W.3d 713, 720 (Mo. Ct. App. 2008); (citing *Eaton v. Mallinckodt, Inc.,* 224 S.W.3d 596, 599 (Mo. banc. 2007). "The party seeking to enforce a settlement agreement has the burden to do so by clear, convincing, and satisfactory evidence." *Id.* "Because specific performance is an equitable remedy, the trial court is afforded great discretion" *Id.* (citing, *Bishop v. Heartland Chevrolet, Inc.*, 152 S.W.3d 893, 896 (Mo. Ct. App. 2005). Missouri courts recognize that agreements to settle a lawsuit may be enforced by motion in that lawsuit. *Smart Cemetary v. Bell Hildings, LLC*, 186 S. W. 3d 423 (Mo. Ct. App. 2006). The trial court may hold an evidentiary hearing on the Motion to Enforce, dispose of the motion on the pleadings, or treat the motion as a summary judgement motion. *See Eaton v. Mallinckrodt*, 224 S.W. 3d 596 (Mo. Ct. App. 2007). The Court will dispose of this motion on the pleadings.

Under Missouri law, principles of contract formation govern the existence and enforcement of the alleged settlement. *Chiganti*, 470 F.3d at 1220. A valid settlement agreement requires involvement of competent parties, a proper subject matter, legal consideration and mutuality of obligation and mutuality of agreement. *Id.* (citing *L.B. v. State Comm. Of Phycologists*, 912 S.W. 2d 611, 617 (Mo Ct. App. 1995)). There is no dispute that the parties are competent to contract and the subject matter is proper. The issue is whether consideration and mutual assent existed and if so are the Parties bound.

"Consideration exists when there is a detriment to the promisee or a benefit to the promisor and mutuality of obligation exists where there is consideration." *Chiganti*, 470 F. 3d at 1221 (internal citations omitted). "'Mutuality of agreement requires "a mutuality of assent by the parties to the terms of the contract' i.e. a 'meeting of the minds'…a court should determine whether such a meeting of the minds took place by 'looking to the intentions of the parties as expressed or manifested in their words or acts." *Chiganti,* 470 F.3d at 1221(citing *L.B., v. State Comm. Of Phycologists* 912 S.W.2d 611, 617 (Mo Ct. App. 1995)).

Plaintiff asserts that consideration and mutuality of obligation and mutuality of assent were present on January 24, 2019. In exchange for a settlement sum Plaintiff asserts that she agreed to release all claims against the Defendants. Defendants argue that the Disputed Paragraph is material to the settlement because it ensures that the Defendants will be sufficiently protected from any future claims against them through Plaintiff relinquishing ownership, or interest in the disputed stock. Plaintiff argues that the Disputed Paragraph is an immaterial after-the-fact term and that the parties orally agreed to terms that were later memorialized in the Confidential Settlement & Release absent the Disputed Paragraph.[3] In support thereof, the Plaintiff submits email exchanges between counsels agreeing to file notice of settlement with the Court and a redacted example release pertaining to a different client. (ECF Nos. 42-2, 42-3). The submitted evidence is not sufficient for the Court to determine what had been agreed to orally by the Parties on January 24, 2019. Although the Plaintiff claims that she intends to be bound through the release of her current and future claims against the Defendants in consideration for

---

[3] An oral agreement which contemplates the execution of documents at a later time can be executed by the court. *Chaganti*, 470 F.3d at 1220 (citing *Byrd v. Liesman,* 825 S.W.2d 38, 39 (Mo. Ct. App. 1992)).

the settlement sum, it is not clear that the method by which Plaintiff would be bound had been agreed upon by the parties.[4]

Defendants assert that Plaintiff's counsel, through conversations with Defendants, bound the Plaintiff to the addition of the Disputed Paragraph through apparent and presumed authority. On February 15, 2019, Defendants sent Plaintiff an email with an attached release stating "if you have no issues, please return it signed" (ECF No. 38-1). The release contains the Disputed Paragraph. On February 26, 2019, the Plaintiff sent revisions excluding the Disputed Paragraph. It is indicated through the Parties correspondence that counsels discussed the terms of the release by phone. (ECF No. 38-2). Neither party has submitted an affidavit as to their conversation. Later on February 26, 2019, Plaintiff's counsel sent the release back to Defendants' counsel. (ECF No. 38-3). In this version of the release the Disputed Paragraph was added back into the release with some modifications. *Id.* On February 27, 2019, Plaintiff's counsel states, "I believe we are there. My client wanted to specifically identify the ITT shares by certificate; and we have some minor grammatical tweaks. You'll get the tweaks/mark up shortly." (ECF No. 38-5). This email is followed shortly thereafter by Plaintiff's email to Defendants stating "Check that we can't agree to the relinquishment of stock ownership. We are discussing still." *Id.* Later on February 27, 2019. Plaintiff's counsel emails Defendants' counsel stating, "…see the final markup. She will sign this document." (ECF Nos. 38-4; 42-1). Plaintiff has once again removed the Disputed Paragraph. *Id.* Defendant would have the Court take Plaintiff's counsel's statement "I believe we are there" to mean that the Plaintiff is bound to the inclusion of the Disputed Paragraph. Although "the apparent authority of an attorney to settle his client's claim…will be binding upon the client unless it is so unfair as to put the other party upon inquiry as to the

---

[4] The Court notes that Plaintiff can relinquish future claims as consideration. It is however not clear whether or not the parties had orally agreed to the relinquishment of Plaintiff's ownership or interest in the stocks at issue in this case on January 24, 2018.

8

authority or imply fraud," (*Kenny*, 277 S.W.3d at 721) the court is reluctant to view this evidence as Plaintiff's counsel clearly settling the claim. The statement by Plaintiff's counsel followed by an email in which it is made clear that the Plaintiff has no intention to relinquish stock ownership does not objectively manifest the Plaintiff's intent to be bound by the Confidential Settlement & Release sent the previous day. Whereas Plaintiff's counsel's statement, "she will sign this document" which excludes the Disputed Paragraph does manifest an intent to bind the Plaintiff.

Upon review of the record before it, the Court finds that there has not been a meeting of the minds sufficient to find an agreement between the parties. Parties disagree as to the terms of the Final Confidential Settlement & Release specifically those relating to the exact consideration to be paid by the Plaintiff. Absent a meeting of the minds the Court will not enforce an agreement between the Parties. If the parties cannot come to an agreement and file a notice of settlement with the Court within thirty (30) days of this order, this case will be set for trial.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Enforce (ECF No. 37) is **DISMISSED**; and that Plaintiff's Motion to Enforce (ECF No. 39) is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Parties shall confer and report their status with regard to settlement with the court within thirty (30) days from this Order.

Dated this 25th day of March, 2019.

/s/ Jean C. Hamilton

UNITED STATES DISTRICT JUDGE